IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
JAMES E. MOORE,                    )
                                   )
            Plaintiff,             )
                                   )   CIVIL ACTION
v.                                 )
                                   )   No. 09-2365-KHV-GBC
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )
_____)
```

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court recommends judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision.

**I.   Background**

Plaintiff applied for DIB and SSI on March 9, 2006, alleging disability after he was struck by an automobile on November 13, 2004. (R. 15). The applications were denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). Id. Plaintiff's request was

granted, and he appeared with counsel and testified at a video hearing before ALJ Norman R. Buls on September 16, 2008. (R. 15). At the hearing, plaintiff testified he had returned to work in April, 2006, and amended his applications for a closed period of disability from November 13, 2004 through April 1, 2006. (R. 715-16). On October 1, 2008, a decision was filed in which it was found that plaintiff had not had a medically determinable impairment which was "severe" within the meaning of the Act for a period of twelve months or more. (R. 15-21). Therefore, the ALJ found plaintiff was not disabled within the meaning of the Act, and denied his applications. (R. 21). Plaintiff sought review of the decision, but the Appeals Council found no reason to justify review, and denied the request. (R. 8-11). Therefore, the ALJ's decision is the Commissioner's final decision. Id. at 8; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial

evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2008); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 416.920. This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether, when considering vocational factors (the claimant's age, education, and past work experience), he is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant

work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show jobs in the national economy within plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Here, plaintiff claims the ALJ erred in finding that plaintiff's impairments were not "severe" within the meaning of the Act for at least twelve months, because the evidence establishes that plaintiff's short-term memory problems persisted for more than twelve months and because plaintiff's treatment providers never released him for full-time work.  In his summation, counsel asserts for the first time, "The medical record has revealed significant spinal disorders that will need to be assessed as a severe impairment but was not investigated at the hearing despite the notice provided by the medical record." (Pl. Br. 30)(without citation to record evidence).  The Commissioner argues that plaintiff's short-term memory problems did not persist for twelve months and, therefore, plaintiff did not have a "severe" impairment; that the ALJ properly found plaintiff's allegations not credible; that the treating providers released plaintiff for part-time work within twelve months of the accident, and plaintiff never followed up with the doctors thereafter; and that the record evidence did not trigger the ALJ's duty to develop the record with regard to plaintiff's

spinal disorder, alleged for the first time before this court. The court agrees with the Commissioner.

**III. Discussion**

    **A.**    <u>**Standard for Evaluating Impairments at Step Two**</u>

An impairment is not considered "severe" within the meaning of the Act if it does not significantly limit plaintiff's ability to do basic work activities such as: walking, standing, sitting and carrying; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521, 416.921. The determination at step two is based on medical factors alone, and not on vocational factors such as age, education, or work experience. <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1100 (10th Cir. 2003).

A claimant must provide medical evidence that he has an impairment and how severe it was during the time the claimant alleges he was disabled. 20 C.F.R. § 404.1512(c), § 416.912(c). At step two of the evaluation process, a claimant must show that he has a "severe" impairment or combination of impairments "that meets the duration requirement in § 404.1509 [416.909]." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The duration requirement is "a continuous period of at least 12 months." <u>Id.</u> §§ 404.1509, 416.909.

The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities. Williams, 844 F.2d at 751. However, he must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

### B. The ALJ's Findings

The ALJ acknowledged that plaintiff had a pedestrian-motor vehicle accident on November 13, 2004, resulting in serious injuries. (R. 18-19). He summarized the medical progress of plaintiff's recovery, noting several points: Physical therapy and speech therapy produced improvement in functional assessment and recall. (R. 19). Dr. Barnett's August 2005 mental status exam and psychological testing revealed mild intellectual limitations, and Dr. Barnett opined that plaintiff was capable of

simple and complex work tasks.  Id.  Plaintiff's October 21, 2005 function report indicated plaintiff could pay attention as long as necessary, could follow written and verbal instructions very well, and had no difficulty handling stress or changes is a routine.  Id.  Dr. Barnett's May 2006 evaluation disclosed further improvement in plaintiff's condition, mild intellectual limitations, and a renewed opinion that plaintiff can work at simple and complex tasks.  Id.

The ALJ found plaintiff's allegations of continuing disabling symptoms not credible because they are not consistent: with the medical evidence; with claimant's mother's description of his activities and abilities; and with plaintiff's statements on his function report, and to Dr. Barnett.  (R. 19-20).  The ALJ stated he credited the uncontroverted opinion of Dr. Barnett that plaintiff had only mild limitations and was able to perform simple and complex work tasks within one year of the November, 2004 injuries, and the uncontroverted opinions of the state agency non-examining physicians who opined that plaintiff's impairments are not severe.  (R. 20)(citing Ex. 1F, pp. 17-21, 235-49, 251-53 (R. 231-35, 449-63, 465-67)).  Based upon these findings, the ALJ applied the Commissioner's psychiatric review technique, and concluded that within twelve months of his injuries plaintiff had no limitations in activities of daily living or in social functioning; mild limitations in

concentration, persistence, or pace; and no episodes of decompensation. Therefore, he found at step two that plaintiff's impairments were not "severe" within the meaning of the Act for at least twelve months, and he denied plaintiff's applications.

**C.   Analysis**

As noted in the court's discussion of the legal standard applicable to judicial review of a decision of the Commissioner, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett, 395 F.3d at 1172; White, 287 F.3d at 905. The starting point in the court's review is the rationale presented in the Commissioner's decision and not what another party, or even the court, might view as the "correct" weighing of the evidence. 42 U.S.C. § 405(g).

Plaintiff's citation to evidence which shows that he required 24-hour supervision on December 21, 2004 is irrelevant to whether the impairment was "severe" for twelve months or longer, because the ALJ acknowledged plaintiff's serious injuries but pointed to evidence that plaintiff's condition had improved before twelve months. Plaintiff's appeal to his own testimony that his memory problems continued is likewise unavailing both because the ALJ found plaintiff's allegations are not credible (a finding to which plaintiff does not assign error) and because plaintiff's testimony does not demonstrate that his memory

problems were "severe" more than twelve months after his injuries. Although plaintiff testified that at one point "in '05,'" he forgot which of his customers placed a food order and he delivered the order to an empty table, that testimony does not show that the alleged problems continued at least twelve months after his injuries. Plaintiff's accident occurred on November 13, 2004. To show that the resulting "severe" impairments continued for at least twelve months, he must demonstrate that the impairments continued to be "severe" through November 12, 2005. Although plaintiff testified that he had the alleged lapse of memory "in '05,'" there is no evidence in the record that this lapse occurred on or after November 12, 2005. Plaintiff's testimony does not show that his impairments were "severe" for a continuous period of at least twelve months.

Plaintiff asserts that he did not begin working until April, 2006, which leaves a period of seventeen months when he was not working, and was therefore disabled. However, the pertinent question at step two is not whether plaintiff was off of work for a period of at least twelve months, but whether plaintiff had a "severe" impairment or combination of impairments for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Plaintiff points to Dr. Barnett's reports, and argues that certain of Dr. Barnett's findings express limits in plaintiff's

mental abilities. He asserts, "Dr. Barnett's comments are not a ringing endorsement of employability." (Pl. Br. 24). Plaintiff is correct to point out that Dr. Barnett recognized uncertainty in his report. For example, as plaintiff noted, in his August 29, 2005 report Dr. Barnett stated, "it is difficult to assess how much impact [plaintiff's mild intellectual limitations] would have on his ability to work." (R. 467). Likewise, in his May 26, 2006 report, Dr. Barnett stated "Mr. Moore identifies memory difficulties as the most significant barrier to employment." (R. 233). However, in each case Dr. Barnett explained why he did not believe the limitations were controlling, and expressed his belief that plaintiff is capable of both simple and complex work tasks, as the ALJ noted. (R. 19, 233, 467)("it appears that [the impact from intellectual limitations] would be minimal;" plaintiff's "Wechsler Memory Scale-III scores . . . fell typically in the low average to average range"). The ALJ relied upon Dr. Barnett's rationale as he is permitted to do. In fact, the law is clear, an ALJ may not substitute his own medical judgment for that of a mental health professional. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).

Plaintiff asserts that plaintiff's treatment providers, Dr. Clark and Dr. Shapiro, released plaintiff to part-time work, but never released plaintiff to full-time work. Thereby he implies that the ALJ erred in according weight to Dr. Barnett's opinion

as a non-treating source, and in finding plaintiff was capable of work. As plaintiff argues, Dr. Clark stated his opinion that plaintiff needs further evaluation before he can be released for full-time work, and Dr. Shapiro opined that it appeared appropriate to release plaintiff to part-time work "in a structured milieu," on a trial basis, while at home with family support. (Pl. Br. 25-26)(citing (R. 246, 471, 475-77). However, the record is by no means clear that Drs. Clark and Shapiro are "treating sources" within the meaning of the Act and regulations. Dr. Shapiro is a psychologist who performed a one-time "Cognitive and Personality Assessment" of plaintiff on July 26, 2005, and provided a summary of his findings:

> In summary the patient is healing, moving in the right direction with strengths and vulnerabilities, understandably wanting increased independence and perhaps it best [sic] to at least appeal to his good sense to 'on a trial basis' begin while with family, attempting but with various support and structures in place prior to making such a big move to Texas, managing apartment, work, all financial responsibilities, etc.

(R. 471). This opinion reveals plaintiff was ready in July 2005 to begin part-time work on a trial basis, and recognizes that plaintiff's condition was improving, but it says nothing about plaintiff's ability to work, or the severity of his impairments on or after November 13, 2005. There is no record evidence of any further contact between Dr. Shapiro and plaintiff.

Dr. Clark only saw plaintiff twice, for a neurological evaluation on May 25, 2005, and on follow-up on July 11, 2005. (R. 480-82). At the May evaluation, Dr. Clark noted that plaintiff had "come a long way," opined that plaintiff needed further evaluation before he was released to work, and recommended an MRI of the brain, an EEG, and formal neuropsychological testing before a return visit in six to eight weeks. (R. 482). The MRI was performed June 2, 2005, and was negative. (R. 485-86). The EEG was performed on June 20, 2005, and was normal with no focal abnormalities or epileptiform discharge. (R. 483). At his July 11, 2005 follow-up, Dr. Clark noted that the MRI and EEG were normal but that no neuropsychological testing had been done. (R. 480). He indicated a need for results from the testing before he could release plaintiff without restrictions. He told plaintiff to call when he knew who would do the testing, he wrote, "I have not scheduled him back for a follow-up appointment, but will be happy to see him back on an as needed basis." Id. There is no record evidence that testing results were ever provided to Dr. Clark, or that plaintiff ever scheduled another appointment with Dr. Clark.

The records of Drs. Clark and Shapiro, containing opinions regarding plaintiff's condition in the second and third quarter of 2005, and indicating that plaintiff never followed up or made further appointments with either medical professional, say little

if anything about the severity of plaintiff's impairments on or after November 13, 2005, and are certainly not contrary to or inconsistent with Dr. Barnett's opinions formulated thereafter on August 29, 2005 and May 26, 2006. Although Dr. Shapiro and Dr. Clark never released plaintiff for full-time work, in the circumstances presented here, that fact does not render the ALJ's decision erroneous. Plaintiff has pointed to no error in the ALJ's decision, and the court recommends the decision be affirmed.

Plaintiff's assertion that he has "significant spinal disorders" that need to be assessed as a "severe" impairment, and his implication that the ALJ erroneously failed to investigate the spinal disorders, does not compel a different result. Plaintiff's assertion appears in but a single sentence in his brief before the court, and he has failed to develop the argument, to explain how the ALJ's decision is erroneous in this regard, or to cite to any record evidence showing "significant spinal disorders."[1] Plaintiff has waived consideration of this issue by failing to develop any argument with regard to it.

---

[1] In his summary of the medical evidence, plaintiff summarizes a November 14, 2004 CT scan of plaintiff's cervical spine showing degenerative changes, with the most severe being disc bulging at the C5-6 level "mildly narrowing left neural foramen." (Pl. Br. 3-4)(emphasis added). However, plaintiff does nothing to relate the summary to his one-sentence argument, to show how the degenerative changes are "severe," or to show how the degenerative changes affect plaintiff.

Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6 (10th Cir. 1999).

Moreover, plaintiff's argument fails on the merits. the Commissioner has considerable discretion in deciding whether to order a consultative examination. Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 778 (10th Cir. 1990). The Tenth Circuit has explained the standard applicable to a determination whether a consultative examination must be performed. Hawkins v. Chater, 113 F.3d 1162, 1167-68 (10th Cir. 1997). "[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." Id. at 1167. Although there is evidence in the record from which one might infer that plaintiff has a medically determinable spinal impairment, plaintiff has failed in his burden to present evidence sufficient to suggest that the spinal impairment is "severe" within the meaning of the Act. In the circumstances, the ALJ had no duty to develop the record with regard to plaintiff's alleged spinal disorders.

**IT IS THEREFORE RECOMMENDED** that be judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within fourteen days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 27th day of April 2010, at Wichita, Kansas.

                                            s:/   Gerald B. Cohn
                                            **GERALD B. COHN**
                                            **United States Magistrate Judge**